UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:05CV-159-R

ALETHA WILLS                                                                                                PLAINTIFF

v.

PENNYRILE RURAL ELECTRIC
COOPERATIVE CORPORATION
d/b/a PENNYRILE RURAL ELECTRIC COOPERATIVE                                 DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on the Defendant's, Pennyrile Rural Electric Cooperative Corporation ("Pennyrile"), Motion for Summary Judgment (Docket #8). The Plaintiff, Aletha Wills ("Wills"), has responded (Docket #11), and the Defendant had replied to her response (Docket #12). This matter is now ripe for adjudication. For the following reasons, the Defendant's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

The Plaintiff, an African-American woman, was employed by the Defendant beginning in July 2001. Wills worked as a customer service representative in Pennyrile's Hopkinsville office. Part of the Plaintiff's job responsibilities was to cover the telephones from 4:00pm - 4:30pm after the regular switchboard operators got off at 4:00pm. Regular switchboard operators work a 7:00am - 4:00pm shift.

Pennyrile had a policy of encouraging its employees to become involved with civic activities in the area. In March 2004, the Plaintiff asked her immediate supervisor, Vicky Palmer ("Palmer"), if she could leave about ten (10) minutes early one day each month to attend a Hopkinsville Human Relations Commission meeting. The organization met at 4:30pm on the

first Tuesday of each month. The normal working hours of Wills were 7:30am to 4:30pm, which included operating the switchboard for the last thirty (30) minutes of each working day.

Palmer took the matter up with Pennyrile President and CEO Eston Glover ("Glover"). He determined that it would be difficult to cover for the Plaintiff during that time because the beginning of the month is the busiest time for the Defendant, when many customers are calling about the payment of their bills. Instead, Glover informed that the Plaintiff that she could either have her meeting at another time during the month or that her organization could use a room at Pennyrile at no-charge to have the meeting. Both of these offers were declined by the Plaintiff.

Following her request denial, the Plaintiff had several disputes with administrators at Pennyrile. In August 2004, the Plaintiff received an annual evaluation, after which the Plaintiff made a complaint to her supervisor about the tone of the supervisor's voice. In addition, Wills also stated that Pennyrile was an unfair place to work. After these charges were made, Palmer scheduled a meeting between Wills and Pennyrile Vice-President of Human Resources, Michele Small ("Small"); Assistant Supervisor, Shirley Chaffin ("Chaffin") and Glover to discuss these incidents. The Defendant alleges that at this meeting Wills refused to give any evidence to support her claims.

In October 2004, the practice of allowing employees to leave early became a growing problem at Pennyrile. On October 4, 2004, the management prohibited all employees from leaving early from then on out.

On January 11, 2005, Wills filed an Equal Employment Opportunity Commission ("EEOC") complaint with the Hopkinsville Human Relations Commission. The EEOC was unable to conclude that the information obtained based off the complaint by Wills violated any statutes. The EEOC offered to mediate the dispute; the Defendant agreed to the mediation, but

the Plaintiff refused.

Pennyrile began to take notice of certain problems that the Plaintiff was causing at the workplace. On February 4, 2005, Wills did not process twenty-eight (28) service orders. Three (3) days later on February 7, 2005, Wills did not abide by company procedure when she referred a complaining customer to the Hopkinsville Human Relations Commission, rather than getting a supervisor. For these actions the Plaintiff was issued a written reminder by Pennyrile.

On May 13, 2005, the EEOC issued a dismissal and notice of rights letter to the Plaintiff. Not long after that, in July 2005, while the Plaintiff was filling in for a Pennyrile employee at the Cadiz, Kentucky office, the Plaintiff refused to take a credit card payment from a customer after she closed out her cash drawer. The supervisor of that office, Ms. Pam Bowland ("Bowland") asked her to reopen the drawer to finish the set, but the Plaintiff refused to do so.

The following day, the Plaintiff met with Palmer, Small and Glover. The Pennyrile management decided to give the Plaintiff three (3) days off with pay to think about what had happened. In addition, Pennyrile policy required that an employee sign any "progressive counseling form" regarding the decision of the management to give an employee paid leave. Glover informed Wills that she could write an explanation on the form, but that she had to sign it acknowledging receipt. The Plaintiff refused to sign the form. Glover insisted that he explained to Wills that by signing the form she was not agreeing to what they were doing, but was acknowledging that she received the form. Wills put her initials on it, but refused to sign it. At that point, Glover terminated Wills. The Plaintiff filed this matter about one (1) month later on August 11, 2005.

In her complaint, the Plaintiff asserted that the Defendant had violated: Title VII, 42

U.S.C. §2000(e); 42 U.S.C. §1988; 29 U.S.C. §626; and KRS 344 (Kentucky Civil Rights Act). Specifically, the Plaintiff alleges that the Defendant gave preferential treatment to a white employee, Emily Pyle ("Pyle"), because Pennyrile allowed her to leave the office early on the fourth Monday of each month to go to a museum board meeting. The Plaintiff alleges that she was not allowed to go to her meeting because of her race, which is African-American. The Defendant contends that race was not a factor in that decision, but instead states that the timing of the meeting at the end of the month was a deciding factor, as well as the fact that Pyle's job responsibilities did not include operating the switchboard at the end of the day. The Defendant also notes that two (2) other black employees were allowed to leave work early on a regular basis to attend school before and at the time the Plaintiff requested to leave early.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere

4

scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

In its Motion for Summary Judgment, the Defendant addressed all the claims asserted by the Plaintiff including: Title VII, 42 U.S.C. §2000(e); 42 U.S.C. §§1983, 1986, 1988; 29 U.S.C. §626; and KRS 344.040 (Kentucky Civil Rights Act). In her response, the Plaintiff only addressed the disparate treatment aspect of the case, and failed to address the other matters discussed in the Defendant's motion for summary judgment. As such, those claims are dismissed as the Plaintiff has failed to meet her burden as required by FRCP 56 in her response to the Defendant's motion for summary judgment. *See Clark v. City of Dublin, Ohio*, 178 Fed. Appx. 522, 524-25 (6th Cir. 2006). Accordingly, the only remaining claim is whether Pennyrile discriminated against the Plaintiff on the basis of her race when it refused to let her leave work early on the first Tuesday of every month to attend a meeting of the Hopkinsville Human

Relations Committee in violation of Title VII, 42 U.S.C. §2000(e) and KRS 344.040.

The Kentucky Civil Rights Act ("KCRA"), KRS §344.040(1), modeled after its counterpart federal statute: the 1964 Civil Rights Act, Title VII, 42 U.S.C. §2000(e); states in pertinent part:

> It is an unlawful practice for an employer: (1) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's *race*, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking (emphasis added).

It is recognized that in race discrimination cases, when there is no direct evidence of discrimination, courts follow the burden shifting analysis standard applied by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). *See Pierce v. Commonwealth*, 40 F.3d 796, 801 (6th Cir. 1994). In her response, the Plaintiff alleges that there is direct evidence of discrimination based upon the facts that: she is black, and her fellow customer service representative, Pyle, is white; and because Wills was not allowed to attend her human rights commission meetings while Pyle was allowed to her museum board meetings. However, this is not direct evidence of racial discrimination at the workplace because nothing direct was stated or done to the Plaintiff in regards to her race. *See McDonnell Douglas Corp* at 802-05. Further, the Plaintiff uses the *McDonnell Douglas* analysis when setting out her argument in her response brief. As such, the Court will examine this matter using the *McDonnell Douglas* burden shifting standard.

Under the *McDonnell Douglas* standard, the Plaintiff must first establish a *prima facie* case of discrimination by showing: 1) that he/she belongs to the statutory protected class, which

in this case is a racial minority, at the time of the alleged discrimination; 2) he/she performed his/her job satisfactorily; 3) he/she was subject to an adverse employment decision and 4) and the adverse decision resulted in a person not in the protected class receiving favor over the person in the protected class. *McDonnell Douglas* at 802-805; *see also Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226, 230 (Ky. App. 1984); *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997); *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). If the plaintiff can meet this initial hurdle, the burden then shifts to the employer who must then state with clarity their legitimate reason for the adverse decision. *Harker*, 679 S.W.2d at 230. If the employer offers a legitimate reason, than the burden shifts back to the plaintiff who must then show that he/she is the victim of intentional discrimination and the employer's reasons were pretextual. *Id*. at 230; *Kentucky Center for the Arts v. Handley*, 827 S.W.2d 697, 700-701 (Ky. App. 1991).

      To meet this final burden the plaintiff must offer direct or circumstantial evidence that rebuts the reasoning offered by the employer. *Handley*, 827 S.W.2d at 700-701; *Kentucky Department of Corrections v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003) *citing Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1973); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083-84 (6th Cir. 1994). Direct evidence consists of evidence, "which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *McCullough*, 123 S.W.2d at 135. Circumstantial evidence is "evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Id.* Although the burden of proof may be on the plaintiff to meet this final standard, in a civil

rights case the Plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his[/her] rejection were in fact a coverup for a....discriminatory decision." *McDonnell Douglas* at 805.  "To make a submissible case on the credibility of his employer's explanation, the plaintiff is 'required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.'" *Manzer*, 29 F.3d at 1084 (*quoting McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993)).

The Court will address each stage of this burden shifting standard to determine whether or not genuine issues of material fact exists in the instant matter.

### 1. Does the Plaintiff establish a *prima facie* case?

As stated *supra*, in order to establish a *prima case* of race discrimination under the *McDonnell Douglas* standard, the Plaintiff must prove by a preponderance of the evidence that: 1) that he/she belongs to the statutory protected class, which in this case is a racial minority, at the time of the alleged discrimination; 2) he/she performed his/her job satisfactorily; 3) he/she was subject to an adverse employment decision and 4) and the adverse decision resulted in a person not in the protected class receiving favor over the person in the protected class. *McDonnell Douglas* at 802-805.  Here, the Defendant does not contest that the Plaintiff can show she was a member of a protected class at the time the incident took place or that she performed her job satisfactorily up until the incident in question.  Wills is an African-American, which falls under the protected class category as defined by KRS 344 and Title VII, and her behavior did not become an issue until after her request was denied.  The Defendant does contest

whether the Plaintiff can show that she was subjected to a materially adverse employment decision and that a similarly situated employee of the non-protected class received favor over the person in the protected class due to the adverse decision.

The Defendant contends that decision not to allow Wills to attend her meetings at the beginning of the month was not an adverse decision, but instead was a "de minimis" employment action that was not materially adverse. "The Sixth Circuit has consistently held that de minimis employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State University*, 220 F.3d 456, 462 (6th Cir. 2000).[1] In *Hollins v. Atlantic Company*, the Sixth Circuit Court of Appeals, in citing the Seventh Circuit Court of Appeals decision of *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir.1993), stated that in determining whether an action is a materially adverse employment action in the context of a discrimination case, a court must examine to see if:

> the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Company*, 188 F.3d 652, 662 (6th Cir. 1999).

In the instant matter, the Plaintiff has not demonstrated that she has suffered a materially

---

[1] *See also Jacklyn v. Schering Plough Healthcare Prod.*, 176 F.3d 921, 930 (6th Cir.1999) (holding that "neither requiring plaintiff to work at home while she was recovering from out-patient surgery, nor rejecting computer expenses that previously had been approved, were materially adverse employment actions"); *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir.1999) (holding that police chief's suspension with pay was not an adverse employment action); *Hollins*, 188 F.3d at 662 (6th Cir.1999) (holding that "[s]atisfactory ratings in an overall evaluation, although lower than a previous evaluation, will not constitute an adverse employment action where the employee receives a merit raise"); *Kocsis v. Multi-Care Management*, 97 F.3d 876, 885 (6th Cir.1996) (holding that "reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").

adverse employment decision. Not permitting the Plaintiff to leave early on the first Tuesday of every month to attend a meeting may have been an inconvenience to the Plaintiff, but it in no way affected the terms of her employment and/or her responsibilities at Pennyrile. *Hollins* at 662. Accordingly, the Plaintiff has not demonstrated that she was subject to a materially adverse employment action.

The Defendant further contends that the Plaintiff cannot prove that a similarly situated employee was treated more favorably than she was because Pyle was not in the same position as the Plaintiff. In *Mitchell v. Toledo*, the Sixth Circuit Court of Appeals held that when determining whether employees are similarly situated for purposes of a *McDonnell Douglas prima facie* case:

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated in all respects. *Stotts v. Memphis Fire Department*, 858 F.2d 289 (6th Cir.1988). Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo*, 964 F.2d 577, 583 (6th Cir. 1992).

In the instant case, though Wills and Pyle were both customer service representatives at the time the incident in question took place, the employees were not similarly situated for purposes of *McDonnell Douglas* as defined by the Sixth Circuit in *Mitchell*. *Mitchell*, 964 F.2d at 583. First, and most importantly, Pyle was never responsible for operating the switchboard the last thirty (30) minutes of every business day. This fact is dispositive because of the emphasis noted by Pennyrile about the importance of answering the phones, especially at the beginning of every month during the billing season, as well as when the regular switchboard operators got off

from work at 4:00pm.  Pennyrile also noted that at the end of the business day during that time of the month was its "busy time," when the Defendant was spread thin with their employees, and could not cover for Wills if she was given the time off.  Further, Wills requested to leave early the first Tuesday of every month while Pyle requested to leave early the fourth Monday of every month.  Again, this difference is important because of the volume of transactions that take place at the beginning of each month compared to those at the end of the month.  Pennyrile has provided transaction records that indicate the volume of business that takes place on the first Tuesday and fourth Monday.  From July - September 2004, the records indicate that more transactions took place at the beginning of each month on the first Monday as opposed to the end of the month on the fourth Tuesday, with an average rate of 367 transactions on the first Tuesday compared to 147 transactions on the fourth Monday.  As such, the Plaintiff has not demonstrated that Wills and Pyle were similarly situated employees for purposes of the *McDonnell Douglas* analysis.  Accordingly, the Plaintiff has not proven a *prima facie* case of discrimination against the Defendant.

**2. Did the Defendant offer a legitimate business reason for denying Wills' request?**

Assuming for purposes of this analysis that Wills can establish a *prima facie* case of discrimination, under the *McDonnell Douglas* standard the burden shifts to the Defendant to offer a legitimate business reason for denying Wills' request.  Here, as mentioned *supra*, Pennyrile did not grant the request of the Plaintiff to leave early because the first of the month is the busiest time for the Defendant due to the volume of billing transactions that take place during that time.  In his deposition, Glover not only noted this fact, but also stated that Pennyrile limits the number of people who can be off during that time.  In addition, he noted that it would be

11

difficult to cover for Wills because of the fact that everyone was so busy, and that the regular switchboard operators had left by 4:00pm.  This reason was bolstered by the transaction data that indicated the volume of transactions that take place at the beginning of the month on the first Tuesday in contrast to those that take at the end of month on the fourth Monday.  Lastly, Glover emphasized that covering the phones the last thirty (30) minutes of the day was an integral part of Wills' job because the regular switchboard operators left by 4:00pm, and that it was Wills' responsibility to cover for them.  Accordingly, the Defendant has offered a legitimate business reason for denying Wills' request.

### 3. Were Pennyrile's Reasons for Denying Wills' Request Pretextual?

After providing a legitimate business reason for denying the request, the burden shifts back to the Plaintiff who must demonstrate that the reasons offered by the Defendant were pretextual.  As stated *supra*, the Plaintiff must show (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.'" *Manzer*, 29 F.3d at 1084 (*quoting McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993))  As such, the Plaintiff must prove an inference of racial discrimination through direct or circumstantial evidence to show that the reasons offered by the Defendant were racially motivated.

The Plaintiff has pointed out many differences between Wills and Pyle in regards to Pyle receiving time off, asserting that these differences prove that Wills was discriminated against because of her race.  These include Pennyrile allowing Pyle to take a half-hour lunch to make up for the time she would be away and letting Pyle come in early so that she could leave early to make her meeting.  In addition, the Plaintiff notes that she only wanted to leave work ten (10)

12

minutes early, not thirty (30) minutes early.

As pointed put by the Defendant in its reply brief, these facts do not demonstrate pretext because they do not relate to the fact that the stated reason offered by the Defendant was the timing of the request. As pointed out by the Defendant, this fact was significant in its reasoning to deny Wills' request for time. As determined *supra*, Wills and Pyle were not similarly situated employees in regards to their responsibilities and their requests to leave early; thus, these differences do not demonstrate pretext on the part of the Defendant. In addition, the Defendant attempted to work with the Plaintiff on letting her go to her meeting by offering two (2) compromises that the Plaintiff rejected, including having the meeting at Pennyrile's office for her organization at no charge or moving the meeting to a different time of the month. Further, the Plaintiff did not address the fact that Pennyrile permitted two (2) other employees who are African-American to leave early for outside reasons prior to and during the time the incident in question took place, demonstrating that the Defendant did not have a policy of precluding African-Americans from leaving work early. As such, the Plaintiff has not demonstrated that the reasons offered by the Defendant in denying Wills' request are pretextual.

Accordingly, the Plaintiff has not proven a disparate treatment case of race discrimination under the *McDonnell Douglas* analysis. The Plaintiff cannot establish a *prima facie* case of discrimination. Further, the Defendant offered legitimate business reasons for making its decision in denying Wills' request. Lastly, the Plaintiff did not demonstrate that the reasons offered by the Defendant were pretextual.

## CONCLUSION

13

For the foregoing reasons, the Defendant's Motion for Summary Judgment is

**GRANTED**.

An appropriate order shall issue.